OPINION
Defendant John Grzechowiak appeals a judgment of the Municipal Court of Licking County, Ohio, convicting and sentencing him for one count of obstructing official business in violation of R.C. 2921.31, after a jury trial. Appellant assigns five errors to the trial court:
ASSIGNMENTS OF ERROR
 1. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO CONTINUE TRIAL.
 2. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS AND/OR COMPEL DISCOVERY.
 3. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FAILING TO GRANT APPELLANT'S MOTION FOR ACQUITTAL AFTER APPELLEE'S CASE IN CHIEF.
 4. THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT A CONVICTION HEREIN.
 5. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AFTER ALL THE EVIDENCE.
At trial, the State presented evidence on April 22, 1998 three officers of the Central Ohio Drug enforcement team, and two officers of Pataskala Police Department went to appellant's residence on Broad Street in Pataskala, Licking County, Ohio. The officers had an arrest warrant for Michael Whiting, appellant's eighteen-year old step-son, who resided with appellant. The officers had originally gone to Whiting's high school to execute the arrest warrant, but Whiting was not there. The officers then went to appellant's residence, and three officers went to the front door while the other officer placed themselves in a position where they could observe the home. Appellant went to the door, accompanied by his pitbull, Rusty. Officer Mitchell was dressed in blue jeans and a long-sleeved white shirt, and had his badge displayed around his neck. Sergeant Fernandez was dressed in a Pataskala Police Department uniform, and Detective Wells was dressed in black fatigues with the word "police" on the front and a badge attached to his belt. Officer Wells was wearing a black mask because he was an undercover officer and was attempting to preserve his identity. Officer Mitchell testified it was standard procedure for undercover officers to wear masks. Sergeant Fernandez was behind the other two officers. It was necessary for Detective Wells to go to the home in spite of the potential compromise to his undercover role because he was the only person who knew what Michael Whiting looked like.
When appellant opened the door, the police identified themselves and explained they had an arrest warrant for Michael Whiting. Appellant closed the door, for approximately 30 seconds, then re-opened it and asked to see the arrest warrant the police officers had mentioned. The officers informed appellant they didn't need to show him the warrant and in fact had left it in the car. The police officers again asked appellant to get his step-son. Appellant shut the door and went back inside for what Officer Mitchell testified was approximately 30 to 45 seconds. During that time the police officers were concerned about what might be going on inside the home. Appellant then came to the door again, and the officers were able to see Michael Whiting behind him. The undercover detective said "that is him", and Officer Mitchell opened the screen door.
Unfortunately, Rusty the dog reacted as any dog would, and lunged at Officer Mitchell. Both Officer Mitchell and Officer Wells shot at the dog, killing him. Officer Mitchell testified he then went after appellant, who took off running. Appellant went to the telephone, and called 911 because of his alarm over the officers entering his home and killing his dog. The officers took Michael Whiting into custody, then arrested appellant for obstruction of official business. Appellant was still on the phone, apparently this time to his lawyer. The officer took the phone away from appellant, handcuffed him, and placed him in the police cruiser. Appellant testified the officers were rough with Michael Whiting, putting a gun to his head, speaking abusively to him, and banging his head on the doorway as they removed him from the home. Appellant indicated Michael would have gone outside to the police. Appellant also testified the police asked him to get his step-son, and never informed him they intended to enter his home. Appellant denied interfering with the police, but testified he was extremely alarmed when these persons burst into his home and began firing their weapons. Appellant testified he only opened the door twice, not, as Detective Mitchell testified, three times. It does not appear Michael Whiting attempted to flee the officers, and the State did not allege appellant actually sicked his dog on the officers. The time elapsed between the time the officers arrived at appellant's home and the actual arrest of Michael Whiting appears to be a few minutes.
 III and V
Appellant moved for an acquittal pursuant to Crim.R 29(A) after the State rested its case in chief, and after the court had received all the evidence. The trial court overruled the motion each time.
R.C. 2921.31 provides in pertinent part:
 No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in performance of his lawful duties.
Here, the State had to prove appellant performed an affirmative act, without privilege, designed to obstruct the police in their lawful arrest of his step-son. We find the trial court should have granted the motion for acquittal, because the evidence which the State presented does not support a conviction as a matter of law.
Construing the officers' testimony in the State's favor, it appears no officer testified appellant sicked his dog on the officer, blocked or stepped into the path of any officer who was attempting to apprehend his step-son, or substantially delayed the execution of the arrest warrant.
Appellant has a constitutionally protected privilege not to permit a police officer to enter his home to make a warrantless arrest of a third party, see State v. Neftzer (1992), 62 Ohio Misc.2d 384. InNeftzer, the arresting officer went to Neftzer's home to serve an arrest warrant on a third person, Natalie Hardin. Hardin herself answered the door and the officer informed her she was under arrest. Neftzer appeared at the door and asked to see the warrant. When the officer refused to produce the warrant, Hardin told the officer she would go get her coat and be back. The officer attempted to enter Neftzer's home to accompany Hardin, but the defendant was standing in his path. The Claremont County Municipal Court found the arresting officer did not have a search warrant for Neftzer's premises. Eventually, backup officers arrived and discovered Hardin had left through the back door, and Neftzer was arrested for obstructing official business. The Claremont County Municipal Court found there was insufficient evidence as a matter of law to support a conviction.
Here, at most the evidence demonstrates appellant, in attempting to restrain his dog, closed the door on the officers once or twice. The officers themselves testified the time elapsed before appellant opened it was never more than thirty seconds to a minute. Appellant testified the officers did not tell him they wished to enter the residence, but only that he should get his step-son, which he did. No officer testified appellant blocked the door, and in fact, it appears appellant was holding the door open when the officers entered. Appellant's step-son did not elude police, and his arrest was promptly accomplished by the officers.
In fact, this court believes appellant's reactions to the events which transpired were remarkably restrained. The appearance of the officers on appellant's door step must have been alarming, particularly because only one of the officers, who stood in the back, was in uniform. Not every citizen welcomes into his home armed and masked men who claim to have a warrant but can not or will not produce it. Appellant's reaction of closing the door so the dog would not reach the officers is an understandable and natural response. The officers testified appellant appeared agitated, as indeed any step-father would upon learning the officers had come to arrest his step-son. It appears from the testimony the situation escalated only after the officers entered the home and killed appellant's pet. Even then, appellant's response was to call his attorney. The State has failed to demonstrate any unprivileged overt act of appellant designed to interfere with the arrest.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the Ohio Supreme Court recently explained the similarities and differences between the concepts of manifest weight and sufficiency of the evidence. The Supreme Court noted the distinctions are qualitative and quantitative in nature. Sufficiency of the evidence refers to the legal standard which is applied to determine whether the evidence is legally sufficient to support a verdict as a matter of law, Thompkins at 386, citations deleted. Even if a judgment is sustained by sufficient evidence, the judgment may nevertheless, be against the weight of the evidence, because the weight of the evidence concerns the amount of credible evidence offered in a trial in support of one side issue,Thompkins at 87, citations deleted.
We find, construing the evidence most favorably to the State, the State's evidence was insufficient as to the matter of law to prove appellant was guilty of the crime of obstructing official business. For this reason, the court should have entered a judgment of acquittal.
The third and fifth assignments of error are sustained.
 IV
Because we find supra, the evidence was insufficient as a matter of law to support a conviction, it follows the weight of the evidence also does not support a conviction. The fourth assignment of error is sustained.
 I and II
Because of our findings supra, these two assignments of error are moot.
The first and second assignments of error are overruled.
For the foregoing reasons, the judgment of the Municipal Court of Licking County, Ohio, is reversed, and pursuant to App. R. 14, we enter a final judgment of acquittal.
By Gwin, P.J., Wise, J., concur.
Hoffman, J., concurs separately.